IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| Charles S. Warren, | ) |
|     Plaintiff, | ) ) ) |
|         v. | )   No. 08-CV-1172 ) |
| John M. Briggs, Tom Bond, Steven M. Settingsgaard, Jim Ardis, and City of Peoria, | ) ) ) ) ) ) |
|     Defendants. | ) |

## REPORT AND RECOMMENDATION

BYRON G. CUDMORE, U.S. MAGISTRATE JUDGE:

This case is before the Court for a Report and Recommendation on the motion to dismiss for failure to state a claim filed by Defendants' Settingsgaard, Ardis and the City of Peoria.

### Standard

To state a claim under federal notice pleading standards, all the Complaint must do is set forth a "short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2).

Factual allegations are accepted as true and need only give "'fair notice of what the . . . claim is and the grounds upon which it rests.'" EEOC v. Concentra Health Serv., Inc., 496 F.3d 773, 776-77 (7th Cir. 2007), *quoting* Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1964 (2007)(other citation omitted). The "allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level' . . . ." Id., *quoting* Bell Atlantic, 127 S.Ct. at 1965, 1973 n. 14. Additional allegations set forth in response to a motion to dismiss should be considered, to the extent consistent with the allegations in the complaint. *See* Hrubec v. National Railroad Passenger Corp., 981 F.2d 962, 963-64 (7th Cir. 1992).

In applying these standards, pro se complaints are construed liberally. Kaba v. Stepp, 458 F.3d 678, 687 (7th Cir.2006)("'district courts have a special responsibility to construe pro se complaints liberally and to allow ample opportunity for amending the complaint when it appears that by so doing the pro se litigant would be able to state a meritorious claim.'"), *quoting* Donald v. Cook County Sheriff's Dept., 95 F.3d 548, 555 (7th Cir.1996).

## Allegations

The relevant allegations are taken from the Amended Complaint (d/e 3), from Plaintiff's "Summary of charges for the U.S. District Court (d/e 16)[1], and from Plaintiff's response to the motion to dismiss (d/e 21). The allegations are set forth as true for purposes of this Recommendation only.

On July 18, 2007, around 7:30 p.m., Plaintiff was sitting in front of a telephone pole on public property in a residential neighborhood in Peoria, leaning on the pole and talking to his son on the phone. A fire truck, responding to someone's phone call of a "man down," pulled up in front of Plaintiff, its driver asking Plaintiff if he was alright. Plaintiff answered yes, and the fire truck pulled away, but then a police car pulled up with two police officers, Defendants Briggs and Bond. A man came out from a house behind Plaintiff and said something to one of the officers, and then the two police officers approached Plaintiff.

The officers asked Plaintiff where he lived. Plaintiff replied that he lived in Washington, Illinois, and informed the officers that he was on City property. Officer Briggs became angry and told Plaintiff that he was on private property and that Plaintiff would be arrested if he "smarted off"

---

[1]This was docketed as an amended complaint, but it appears that Plaintiff intended it to be further statements in support of his Amended Complaint (d/e 3).

again. Plaintiff walked away as instructed, toward the house of his girlfriend where he was staying, which was about one block away, across the street. For about 100 feet, there was no sidewalk, so Plaintiff walked beside the curb, and then back on the sidewalk. The police officers followed Plaintiff in their car. Though Plaintiff had not walked in the middle of the street and there were no cars on the road, Officer Briggs told Plaintiff that he had jaywalked and asked for Plaintiff's identification. Plaintiff had not jaywalked at any time, nor was he ever charged with jaywalking.

Plaintiff felt threatened, as if the officers were trying to start trouble, so Plaintiff gave the officers a "pre-paid legal card" that states, "To any law enforcement or security officer: If it is your intention to question, detain, or arrest me, please allow me to call an attorney immediately." (d/e 3, p. 12). Plaintiff had never been arrested before and thought an attorney could help save him from being falsely arrested. When Officer Briggs asked Plaintiff for his identification, Plaintiff answered that he believed his rights were being violated and asked to call an attorney. Plaintiff was not refusing to produce his identification, he was just trying to protect himself.

Without asking a second time for Plaintiff's identification, Officer Briggs rushed Plaintiff, grabbing and twisting Plaintiff's right arm, while

Officer Bond grabbed Plaintiff's left arm. Plaintiff then offered to show his identification, but Officer Briggs continued twisting Plaintiff's right shoulder. Though Plaintiff offered no resistance, the officers threw Plaintiff, a 55-year old man, on the ground, breaking his prescription trifocals and injuring his right shoulder. Officer Briggs continued to twist Plaintiff's right arm while Plaintiff was lying passively on his stomach. While Plaintiff was in this position, Briggs forced Plaintiff's elbow in a particular direction, remarking, "See? He's resisting arrest."

Officers took Plaintiff's wallet from his pocket, removed his driver's license, and continued to rifle through Plaintiff's wallet. The officers then looked into Plaintiff's car, which was parked on private property. Police had no probable cause to search Plaintiff's wallet or look into his car. Plaintiff was handcuffed and driven to the police station, where he posted bail.

Officer Briggs falsified his police report and falsely accused Plaintiff of "walking on a highway," resisting arrest and obstruction of justice. At Plaintiff's scheduled court appearances, all the charges were dropped. Plaintiff alleges that it was clear at those hearings that a large amount of false charges against others were also dropped.

On July 16, 2008, Plaintiff filed this lawsuit, pursuing claims for false arrest, excessive force, unreasonable search and seizure, and assault and battery. In addition to pursuing these claims against Officers Briggs and Bond, Plaintiff asserts that the Chief of Police, Mayor of Peoria and the City of Peoria fail to adequately train City police officers and have a policy of condoning unconstitutional conduct by police officers.

## Analysis

Defendants Briggs and Bond, the arresting officers, have not filed a motion to dismiss. Only Defendants Settingsgaard (the Chief of Police), Ardis (the Mayor of the City of Peoria), and the City of Peoria have moved to dismiss, so the Court addresses the claims only as they pertain to these three defendants.

The Chief, Mayor and City argue that: 1) there is no supervisory liability under 42 U.S.C. § 1983; 2) no inference arises that they were personally responsible for the constitutional violations; and, 3) no inference arises that the constitutional violations were the result of an official municipal policy.

### I. Supervisory Liability

Settingsgaard and Ardis are correct that they are not liable in their individual capacities under 42 U.S.C. § 1983 for the unconstitutional

conduct of the officers solely because of their supervisory positions.

> To be held liable for conduct of their subordinates, supervisors must have been personally involved in that conduct. . . . (citations omitted). . . . Supervisors who are merely negligent in failing to detect and prevent subordinates' misconduct are not liable .[under 42 U.S.C. § 1983] . . . The supervisors must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see.  They must in other words act either knowingly or with deliberate, reckless indifference.

Jones v. City of Chicago, 856 F.2d 985, 992-93 (7th Cir. 1988)(citations omitted);  Chavez v. Illinois State Police, 251 F.3d 612, 651 (7th Cir. 2001)(supervisor can be liable if he directs the unconstitutional conduct, or if it occurred with the supervisor's knowledge and consent)(citation omitted).

The Court agrees with Mayor Ardis that Plaintiff's allegations against him do not plausibly suggest that the Mayor is personally responsible for the false arrest and excessive force.  No reasonable inference arises that the Mayor had anything to do with the training of the officers or that he knew of and condoned, or turned a blind eye to, their conduct.[2]  It is clear

---

[2] Mayor Ardis argues that judicial notice can be taken that, pursuant to § 2-281(a) of Chapter 2 of the Peoria City Code, the City Manager supervises the City departments, not the Mayor.  Mayor Ardis seems to argue that under this section he has no power to establish policy for the City's police department.  The Court need not decide this, because Plaintiff states no claim against Ardis even without Section 2-281(a).

from Plaintiff's response that Plaintiff believes the Mayor is liable for the officers' conduct simply because he is the Mayor. (d/e 21, p.4). That is not a sufficient basis to find Mayor Ardis liable in his individual capacity under 42 U.S.C. § 1983. Palmer v. Marion County, 327 F.3d 588, 594 (7th Cir. 2003)(there is no *respondeat superior* liability under § 1983).

Accordingly, the Court will recommend that Mayor Ardis be dismissed in his individual capacity, and, as discussed below, in his official capacity too, since the City of Peoria is already a defendant.

The Court's recommendation is different for Police Chief Settingsgaard. Plaintiff alleges that Settingsgaard is "responsible for the training, supervision, and discipline of his officers . . . ." (d/e 21, p. 4). While Settingsgaard is not liable for his officers' constitutional violations just because he is the Chief, he could be personally responsible if he knew of and condoned their conduct or if he "personally devised a deliberately indifferent policy that caused a constitutional injury." Armstrong v. Squadrito, 152 F.3d 564, 581 (7th Cir. 1998). Unlike the Mayor, Settingsgaard's position as Chief of Police lends some plausibility to a claim against him individually. Thus, the Court will recommend that Settingsgaard remain in his individual capacity at this stage of the proceedings.

## II. Unconstitutional Policy of the City of Peoria

Plaintiff asserts that the false arrest and the excessive force were the result of official City policy or lack thereof (i.e., failure to train or supervise).

A municipality, such as the City of Peoria, can be liable under § 1983 for maintaining unconstitutional policies, or for failing to implement a policy to prevent constitutional deprivations.  Grieveson v. Anderson, 538 F.3d 763, 771 (7th Cir. 2008);  Armstrong v. Squadrito, 152 F.3d 564, 578-79, *citing* Jones v. City of Chicago, 787 F.2d 200, 204 (7th Cir. 1986)("[I]n situations that call for procedures, rules or regulations, the failure to make policy itself may be actionable.").  Thus, a city can be liable under 42 U.S.C. § 1983 for failing to adequately train or supervise its police officers, but only when such failure is attributable to a custom or policy of "deliberate indifference to the rights of people with whom the police came in contact." Alexander v. City of South Bend, 433 F.3d 550, 557 (7th Cir. 2006), citing City of Canton v. Harris, 489 U.S. 378, 388-89 (1989).

"'The "official policy" requirement for liability under § 1983 is to "distinguish acts of the municipality from acts of employees of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible."'" Grieveson v. Anderson, 538 F.3d 763, 771 (7th Cir. 2008)(quoted cites omitted).   Official

policy can be proven by showing that the constitutional violation was caused by: 1) an express policy; 2) a widespread practice "so permanent and well-settled as to constitute a custom or usage within the force of law"; or, 3) a person with "final policy-making authority." Billings v. Madison Metropolitan School Dist., 259 F.3d 807, 817 (7th Cir. 2001), *citing* McCormick v. City of Chicago, 230 F.3d 319, 324 (7th Cir. 2000).

Defendants argue that Plaintiff alleges only one isolated incident, not a policy. Plaintiff counters that "the Peoria newspaper carries various stories of abuse of power and false arrest by Peoria police . . . The Plaintiff is certain that the judge and the police department are aware of various cases." (d/e 21, p. 3). Plaintiff also alleges that many false charges were dismissed against others at Plaintiff's court hearing, he believes demonstrating a practice and pattern of false arrest. He asserts that "this unlawful law enforcement . . . [is] not just limited to my case." (d/e 16, p.3).

The Court believes Plaintiff has at this stage sufficiently alleged an unconstitutional City policy (or lack thereof). Without the benefit of discovery, it is hard to see what more Plaintiff could allege to state a claim for an unconstitutional city policy. Whether Plaintiff can eventually prove his claim is a separate question for resolution on a developed factual record. *See, e.g.,* Alexander v. City of South Bend, 433 F.3d 550, 558

(7th Cir. 2006)(upholding summary judgment to city on *Monell* failure-to-train claim).

Mayor Ardis and Chief Settingsgaard, however, should be dismissed to the extent they are sued in their official capacities.  A § 1983 claim against a defendant in an official capacity is a claim against the government entity that he or she represents, in this case the City of Peoria. Since the City is already named as a defendant, naming these defendants in their official capacities is redundant.  See Sanville v. McCaughtry, 266 F.3d 724, 732-33 (7th Cir. 2001)("Official capacity suits are actions against the government entity of which the official is a part.").  Plaintiff does not state specifically that he sues them in their official capacities, but it is implied to the extent he pursues actions against them based on the City's alleged official policy.

Thus, if this recommendation is accepted, Mayor Ardis would be dismissed from the action entirely, because Plaintiff fails to state a claim against Ardis in his individual capacity, and because a suit against Ardis in his official capacity is redundant.  Chief Settingsgaard would remain in his individual capacity, and the City of Peoria would remain on the official

policy claim.[3]  Officers Briggs and Bond would remain in their individual capacities.

**IV.  Qualified Immunity**

Plaintiff's response argues against qualified immunity, but Defendants do not argue for qualified immunity in their motion to dismiss. The Court believes Plaintiff is responding to the assertion of qualified immunity in the Answer of Defendants Briggs and Bond.  Briggs and Bond are simply reserving their defense of qualified immunity in their Answer. The issue of qualified immunity is not addressed unless a motion is made to dismiss based on qualified immunity.  Accordingly, the Court does not address Plaintiff's qualified immunity arguments or his arguments on the merit of his claims against Briggs and Bond.

WHEREFORE, the Court RECOMMENDS that Defendants' Motion to Dismiss be granted in part and denied in part (d/e 18).  The Court recommends that Defendant Ardis be dismissed entirely and that Defendant Settingsgaard be dismissed only to the extent he is sued in his official capacity.  The Court further recommends that Defendants' motion to dismiss be denied in all other respects.  If this Recommendation is

---

[3]Plaintiff may have also named the City for purposes of indemnification.  See 65 ILCS Section 5/1-4-6 (indemnification for injuries caused by police officer).

adopted, Defendants Settingsgaard, Briggs and Bond will remain in their individual capacities, along with the City of Peoria.

Any objections to this Report and Recommendation must be filed in writing with the Clerk of the Court within ten working days after service of a copy of this Report and Recommendation. See 28 U.S.C. § 636(b)(1). Failure to timely object will constitute a waiver of objections on appeal. Video Views, Inc. v. Studio 21, Ltd., 797 F.2d 538, 539 (7th Cir. 1986). See also Local Rule 72.2.

ENTER:   December 17, 2008

*s/ Byron G. Cudmore*

_____
BYRON G. CUDMORE
UNITED STATES MAGISTRATE JUDGE